IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18–cv–01516–RBJ–KMT

MARY HEATH,

      Plaintiff,

v.

ROOT9B, and
ERIC HIPKINS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on Defendant Eric Hipkins' Motion to Dismiss the Third Amended Complaint [Doc. No. 29] ("Hipkins Mot.") filed August 27, 2018, to which Plaintiff Mary Heath, acting *pro se*, filed a Response [Doc. No. 32] on August 28, 2018 and to which Defendant Hipkins filed a Reply on September 7, 2018 [Doc. No. 38].

      Also before the court is Defendant Root9b's "Motion to Dismiss Amended Complaint or, in the Alternative, for Summary Judgment" [Doc. No. 30] ("Root9b Mot.") filed August 27, 2018), to which Plaintiff filed a Response on August 28, 2018 [Doc. No. 33] and Defendant Root9B filed a Reply [Doc. No. 40] on September 11, 2018.

### BACKGROUND AND FACTS

      Plaintiff filed her Third Amended Complaint [Doc. No. 23] ("TAC") on August 13, 2018. Plaintiff cites her statutory authority to bring a federal action as "Federal question pursuant to 28

U.S.C. § 1331" and "18 U.S. Code 1348 – Securities and Commodities Fraud." (TAC at 3.)

Plaintiff brings two claims against Defendant Root9B[1] and Defendant Eric Hipkins. Claim One

alleges "Root9B & Eric Hipkins have committed Securities & Commodities Fraud." Under the

"Supporting Facts" section of the TAC Plaintiff states, "They swindled their investors out of

millions of dollars." (*Id.* at 4.) Claim Two alleges the defendants "falsely advertised they are the

#1 Cybersecurity Company" and references the narrative beginning on page 6 of the TAC. (*Id.*

at 5.)

 Plaintiff asserts she was interested in investing in technical stocks so she "googled the #1

Cybersecurity Company." (*Id.* at 7.) She says she came upon articles in which Root9b[2] was

represented by Eric Hipkins as being the "#1 Cybersecurity 500 for the 4th consecutive quarter."

(*Id.*) Before she made any investment in Root9b, Plaintiff claims she called Root9b's "office on

the NYSE" at 212-371-8660 and spoke to a male who answered the phone who told her, "Root9b

was reorganizing to become a company that has all its resources going to cybersecurity." (*Id.* at

8.) The same male allegedly also told her Root9b was "close, if not completing a contract with

the Federal Government. This contract with the Federal Government would bring in millions of

dollars." (*Id.*)

 Plaintiff asserts that she "first invest[ed] in Root9b" on May 16, 2017 and "purchased

over 64,000 shares of Root9b" over "the next approximately 7 months[.]" (*Id.* at 7.) The TAC

---

[1] Plaintiff states that she "use[s] the name Root9b as the Defendant name "because they have constantly changed their name from Root9b LLC to Root9b Technology to Root9b Holdings." (*Id.* at 7.)

[2] The parties spell the Defendant "Root9B" and "Root9b" and "root9B and "root9b" interchangeably. Unless specifically quoting from a document, the court will reference the Defendant company as Root9b simply for consistency in this Order.

does not state what price per share Plaintiff paid for her stock. Plaintiff claims that on July 12, 2017, she called the Root9b office in Colorado Springs to express an interest in attending a stockholder's meeting for Root9b and spoke to an employee.[3] She was discouraged from attending the meeting, but the employee told her "the company was growing." (*Id*. at 9.) When Plaintiff expressed concern that the stock price was dropping, the employee allegedly told Plaintiff, "they have been speaking to investors, but this is good for stockholders. The investors will pay off the debt & stabilize the company." (*Id*.)

Plaintiff alleges that between May 19, 2017 and June 29, 2017, Quad Capital Management ("Quad") began purchasing RTNB stock and eventually obtained 378,697 shares of RTNB.[4] Plaintiff provides no information in the TAC about the ownership or membership or officers of Quad. Plaintiff claims that the stock price of Root9b rose to $11.99 per share. (*Id*.) During or near the same time period, Plaintiff alleges "Root9b Holdings, Inc. . . . issued a series of secured convertible promissory notes to accredited investors." (*Id*. at 10.) The TAC contains no identification of the investors. On or about August 11, 2017, those investors demanded "immediate repayment of all outstanding amounts due" associate with the notes, alleging improprieties under the loan provisions. (*Id*.) On August 22 and 23, 2017, Quad sold all its RTNB stock, and two days later when an unspecified "press release" was issued, the company's stock allegedly fell to "less than $2.00." (*Id*.)

---

[3] Plaintiff implies that she knows the name of the individual she spoke to at Root9b in Colorado Springs, Colorado, but she does not want to state his name in the TAC because "I do not want to get this person in trouble." (*Id.* at 8.)
[4] The court cannot ascertain whether RTNB is a stock ticker symbol or the name of a predecessor company.

The TAC alleges that the investors foreclosed on the promissory notes issued to them.[5] (*Id.*)  The investors took all Root9b's assets, including full ownership of Root9b, LLC, a private entity which was apparently a Root9b Holdings' subsidiary.  (*Id.*)  The secured investors therefore became the sole owners of Root9b, LLC, the private entity.  (*Id.*at 10–11.)  The investors then sold the remaining assets of Root9b Holding, Inc. at a foreclosure sale to Tracker Capital Management.[6]  (*Id.* at 11.)  Plaintiff claims that the Asset Acquisition Agreement between the secured creditors and Tracker Capital Management contains confidentiality provisions that she has not been allowed to see.  (*Id.* at 12.)  Plaintiff asserts that Eric Hipkins still has ownership of "the company."  (*Id.* at 13.)  Plaintiff claims she and other stockholders in the "worthless Root9b Holdings" were left holding worthless stock and concludes that "insiders" pocketed all the money received from sales of the stock at the Quad inflated price and retained unencumbered ownership of the cybersecurity business.  (*Id.* at 11.)

According to Plaintiff, Root9b evolved into two companies—Root9b, LLC and Root9b Holdings.  (*Id.* at 12.)  Plaintiff contends Root9b failed to protect the financial interests of its investors.

While disagreeing with Plaintiff's conclusions, Root9b does not significantly disagree with the Plaintiff's factual version of events and transactions set forth in the TAC with respect to the business dealings of Root9b.  (Root9b Mot. at 3–4.)

---

[5] Plaintiff's states also that "[t]he company that took RTNB stock to $12.00/share also foreclosed on Root9b."  (*Id.* at 10.)  The court deems this statement to be a conclusion, not a fact, and it appears to be inconsistent with the facts set forth in the TAC that allege that the investors foreclosed on promissory notes, not Quad.

[6] Plaintiff alleges Tracker Capital Management purchased Root9b on September 28, 2018, and that the company transferred to Tracker with no debt.  (TAC at 12.)

The parties agree that Tracker Capital Management "has no connection or affiliation to [Root9b]" and "purchased the Foreclosed Assets from the Secured Creditors for fair value pursuant to an arms-length business transaction negotiated between sophisticated commercial entities." (*Id*.) The sole variance between the Defendants and Plaintiff regarding these facts (as opposed to conclusions drawn therefrom) is whether Eric Hipkins retains any ownership of Root9b, LLC.[7] (Root9B Mot. at 5; Bremer Decl. at ¶ 14.)

## LEGAL STANDARDS

### A. *Pro se* Plaintiff

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] h[er] pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). *Pro se* plaintiffs must "follow the same rules of procedure that govern other litigants" and "must still allege the necessary underlying facts to support a claim under a particular legal theory." *Thundathil v. Sessions*, 709 Fed. App'x 880, 884 (10th Cir. 2017) (citations and internal quotation mark omitted). "[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935. F2d at 1110. A *pro se* litigant's

_____

[7] Of course, at the motion to dismiss stage, the court will presume all of plaintiff's factual allegations are true in any event and will construe them in the light most favorable to the plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Id.*

Courts "cannot take on the responsibility of serving as the litigant's attorney in constructing arguments" or the "role of advocate" for a pro se plaintiff. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle her to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

## B. Subject Matter Jurisdiction

Federal Rule of Civil Procedure Rule 12(b)(1) empowers a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff s case. Rather, it calls for a determination that the court lacks authority to adjudicate the matter, attacking the existence of jurisdiction rather than the allegations of the complaint. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *See Basso*, 495 F.2d at 909. The dismissal is without prejudice. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). When considering a Rule 12(b)(1) motion, however, the court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations . . . [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id.*

The party invoking federal jurisdiction has the burden of establishing standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). In addition to asserting an injury, this requires the party to show "her injury is 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court,' " and that such injury is likely to be redressed by the relief sought. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quoting *Lujan*, 504 U.S. at 560). The law in this circuit is clear that a plaintiff lacks standing if she "fail[s] to demonstrate the necessary causal connection between

[her] injury and these defendants," including by failing to present evidence that the defendants "have done or have threatened to do anything that presents a substantial likelihood of causing [plaintiff] harm." *Id.* at 1156–57.

## C. Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1109. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly

suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quotations omitted).

## ANALYSIS

### A.   Standing/Subject Matter Jurisdiction.

As an irreducible constitutional minimum, a plaintiff must satisfy three criteria in order for there to be a "case or controversy" that may be resolved by the federal courts. *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an

"injury in fact"—an invasion of a legally protected interest that is both (a) concrete and

particularized and (b) actual or imminent, not conjectural or hypothetical. *Id.* Second, there

must be a causal connection between that injury and the challenged action of the defendant—the

injury must be "fairly traceable" to the defendant, and not the result of the independent action of

some third party. *Id.* Finally, it must be likely, not merely speculative, that a favorable judgment

will redress the plaintiff's injury. *Id.* at 561. *See also Nova Health Sys. v. Gandy*, 416 F.3d

1149, 1154 (10th Cir. 2005). The causal connection requires that <u>the defendant's</u> actions caused

the harm to Plaintiff. *Id*. at 1156-57. Root9b, LLC argues that it <u>is</u> the defendant in this action

and that Root9b, LLC did not cause any harm to Plaintiff. Therefore, the Plaintiff lacks standing

to bring claims against it.

At the outset, the court notes that the law firm of Ireland Stapleton Pryor & Pascoe, PC,

has taken it upon itself without authorization to amend the caption of the instant case to show

Root9b, *a Colorado limited liability company*, as one of the defendants in this action. Ireland

Stapleton Pryor & Pascoe, PC purports to represent Root9b, LLC. (*See* Root9b Mot.) Plaintiff

filed the case against the entity Root9B. She did not include the term "a Colorado limited

liability company" in her caption on her originally filed Complaint nor on any of her Amended

Complaints. [Doc. Nos. 1, 13 (which added the phrase "including directors of the company"), 21

or 23, the operative complaint.] Nor did the Plaintiff describe the Defendant in her lawsuit in

terms of its organizational structure in the body of the documents. The official caption of this

case is <u>Mary Heath, Plaintiff v. Root9B and Eric Hipkins, Defendants.</u>

For reasons not entirely clear to the court, Ireland Stapleton Pryor & Pascoe, PC insist that Plaintiff served Root9b, LLC and that Root9b, LLC is the Defendant entity. This, too, is factually incorrect. The Process Receipt and Return from the U.S. Marshals Service [Doc. No. 8] shows the entity "Root9B" was served on July 12, 2018 at 102 N. Cascade Avenue, Suite 220, Colorado Springs, CO. The Chief Operating Officer for Root9b, listed as John Harbaugh, was the individual who accepted service on behalf of the Defendant. As a limited liability company, it is unlikely that Root9B, LLC has either a Chief Operating Officer (or any officers at all) or Directors, although as such companies are by definition not public entities, the members can structure an LLC in whatever way they see fit.

According to Annual Report, Form 10–K filed by ROOT9B HOLDINGS, INC., root9b Holdings, Inc. is located at 102 N. Cascade Avenue, Suite 220, Colorado Springs, CO 80919, the location where service was made by the Plaintiff. (Root9b Mot., Ex. 1–A [Doc. No. 30–2] at 2; Process Receipt [Doc. No. 8].) ROOT9B, LLC, by contrast, according to documents submitted by Root9b, LLC, is a Limited Liability Company with its principal office mailing address at 90 S. Cascade, Ave. #830, Colorado Springs, CO 80903, and the registered agent for service of process for ROOT9B, LLC is Eric Scott Hipkins. (Root9b Mot., Ex. 1–B [Doc. No. 30–3] at 2.)

Root9B Holdings states, in the Form 10K, [Doc. No. 30–2] that "references to "we," "our," "us," "the Company," or "root9B" refer to root9b Holdings, Inc. (*Id*. at 5.) Throughout the document, root9B Holdings, Inc. refers to itself as root9b or root9B. root9B Holdings, Inc. represented that in 2014 it became root9B Technologies, Inc. and RTNB to distinguish itself from root9B Holdings, Inc.'s wholly owned subsidiary, root9B, LLC. (*Id*. at 5.) root9b Technologies changed its name to root9B Holdings, Inc.in December 2016. During that same

period the company "announced our commitment to re-focus our business to that of a pure-play cybersecurity company based on the operations of our wholly-owned subsidiary root9B, LLC." (*Id*. at 6.)  As of the Form 10–K filing, root9B Holdings, Inc. represented that "the key emphasis today is around risk related to cybersecurity.  With our cyber group, root9b,[8] LLC, we take a new approach . . . ."  (*Id*.)  Additionally, root9B Holdings, Inc. relocated its corporate headquarters from Charlotte, NC to a co-location with root9B, LLC.  (*Id.* at 11.)  root9B Holdings, Inc. lists its headquarters in Colorado Springs, Colorado.  (*Id*. at 19.)  On root9B Holdings, Inc.'s Form 8–K Report to the SEC August 7, 2017 (Mot., Ex. 1–C [Doc. No. 30–4], the company lists William Hoke as its Chief Financial Officer.  During this general time, it appears that Eric Hipkins was a director and Chief Executive Officer of root9B Holdings, Inc.  (See Root9b Mot, Ex. 1–G, 8–K Report, September 28, 2017 [Doc. No. 30–8] at 3, indicating that upon the sale of the assets of root9B Holdings, Inc., Eric Hipkins resigned these positions.)

Further, a review of the *pro se* allegations of the Third Amended Complaint do not comport with an inference that Plaintiff intended to bring claims only against the private entity, Root9b, LLC.  Plaintiff's claims are for securities fraud and misrepresentations concerning securities.  The TAC clearly makes claims and factual assertions that would only apply to a publicly traded stock company such as Plaintiff's assertions that she "purchased over 64,000 shares of Root9b" (TAC at 7), and that Plaintiff talked to someone associated with Root9b's New York Stock Exchange office (*id*. at 9).   Many references to Root9b's stock are contained in the allegations (*see id*. at 9–12).  A limited liability company has no stock and is not controlled

_____

[8] The court is unsure whether capitalization of the alpha letter b in "root9b" verses "root9B" is significant or simply a typographical error.

by or answerable to the Securities and Exchange Commission, nor would it be affiliated with the New York Stock Exchange.

Finally, Plaintiff specifically states as to her selection of a Defendant entity, "I use the name Root9b because they have constantly changed their name from Root9b LLC to Root9b Technology to Root9b Holdings." (TAC at 7.) Plaintiff alleges that the changing but similar names used by the same essential company is "one of the methods they use to confuse their investors." (*Id*.)

For Defendant to now argue that Plaintiff's Complaint should be dismissed because she has sued the wrong entity and made securities fraud allegations against only a private company is disingenuous, at best.

The court recommends that Defendant Root9b's motion to dismiss Plaintiff's claims for lack of standing be denied.

### B. Claim One

#### 1. 18 U.S.C. § 1348

Both Root9b and Defendant Hipkins argue that Plaintiff's complaint fails to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for violation of 18 U.S.C. § 1348 because this is a criminal statute without a private right of action. (Hipkins Mot. at 6; Root9B Mot. at n.4.)

There is no question that 18 U.S.C. § 1348 is a criminal statute without a private right of action. *Butler v. Onewest Bank, FSB*, No. 10–00300HG–KSC, 2010 WL 3156047, at *3 (D. Haw. Aug. 6, 2010) ("These are criminal provisions, and Plaintiff does not offer support to show that a private right of action exists to pursue her allegations in a civil lawsuit."); *Chavarria v. Wells Fargo Bank, N.A.*, No. CV1503403BROASX, 2015 WL 4768227, at *4 (C.D. Cal. Aug.

11, 2015) ("To the extent that Plaintiff attempts to criminally prosecute Defendants, he has no authority to do so. Section[ ] . . . 1348 of Title 18 [is a] federal criminal statute[ ] that do[es] not provide for [a] civil cause[ ] of action. Plaintiff is not authorized to bring th[is] claim[ ].").

Therefore, the court Recommends that any claim in the Third Amended Complaint purporting to arise under 18 U.S.C. § 1348 be dismissed.

### 2. Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5.[9]

Neither defendant has argued whether the Plaintiff's Claim One could survive if brought under an appropriate civil statute such as Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5, although Defendant Hipkins did address Rule 12(b)(6) dismissal of Claim Two, false statements, under that statute. The court has the discretion to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915(e)(2) "at any time if . . . the action . . . is frivolous or malicious; [or] fails to state a claim on which relief may be granted." While the Plaintiff in this action proceeds *pro se*, she is <u>not</u> proceeding under § 1915. The court also may dismiss a complaint *sua sponte,* however, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing [her] an opportunity to amend [her] complaint would be futile." *See Hall*, 935 F.2d at 1110 (quoting *McKinney v. Oklahoma, Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)).

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon. These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by

---

[9] Defendant Root9b raises arguments under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Although Defendant Root9b's arguments pursuant to 12(b)(6) take a different tack from those argued by Defendant Hipkins, nevertheless since the TAC fails to state a claim against <u>anyone</u> under the securities laws, the court is recommending dismissal of the case against all defendants.

clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.

*Neitzke v. Williams*, 490 U.S. 319, 329–30 (1989).

The Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or any facility of any national securities exchange—
....
(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (2010), promulgated under the authority of this

section, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national security exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of material fact or omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit on any person, in connection with the purchase or sale of any security.

*Id.*

Given the finding of the court, *supra,* that Plaintiff has erroneously listed her

jurisdictional basis for Claim One under a criminal cause of action with no private right for her

to sue, and reading the TAC liberally as the court must at this stage, the court will analyze

whether Plaintiff's claims should be deemed to have been brought under the securities

provisions contained in SEC Rule 10b–5 and, if deficient at this stage, whether she could

potentially amend her complaint in such a way as to not be futile. Otherwise, this court is prohibited from inferring an action brought under Rule 10b-5 (a) and (c) in Claim One *sua sponte*.

There are three specified ways to violate Rule 10b–5. The first method is by engaging in *a scheme* to defraud in connection with the sale or purchase of a company's stock. Closely connected to that method is subsection (c), engaging in a *course of conduct* that operates as a fraud or deceit on any person in connection with the purchase or sale of stock. The third method as set forth in subsection (b)—and the one most obviously applicable to Plaintiff's undesignated Claim Two for "falsely advertis[ing] they are the #1 Cybersecurity Company"—involves making an untrue or misleading statement in connection with the sale of stock.

A plaintiff suing under Rule 10b–5 must comply with the heightened pleading standards of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104–67, 109 Stat. 737 (codified as amended in scattered sections of 15 U.S.C.). Rule 9(b) mandates that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9; *Iqbal*, 556 U.S. at 686. "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud, . . ." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield*, 472 F.3d 702, 726–27 (10th Cir. 2006) (internal quotation marks and citations omitted).

SEC Rule 10b–5(a) and (c) make it unlawful to engage, directly or indirectly, in a course of business or employ a device in furtherance of a scheme to defraud in connection with the sale or exchange of securities. *S.E.C. v. Zandford,* 535 U.S. 813, 819, 122 S.Ct. 1899, 1903, 153 L.Ed.2d 1 (2002). To prove a violation of Rule 10b–5(a) or 10b–5(c), Plaintiff must prove by a

preponderance of the evidence that a defendant, acting with scienter, committed a manipulative or deceptive act in furtherance of the alleged scheme to defraud. *In re Qwest Communications International, Inc. Securities Litigation,* 387 F. Supp. 2d 1130, 1143 (D. Colo. 2005); *United States S.E.C. v. St. Anselm Expl. Co.*, 936 F. Supp. 2d 1281, 1298–99 (D. Colo. 2013)

Scheme liability, as these two subsections are sometimes called, recognizes that "[c]onduct itself can be deceptive." *Stoneridge Investment Partners, LLC v. Scientific–Atlanta,* 552 U.S. 148, 158 (2008). Nevertheless, liability does not arise simply by virtue of repackaging a fraudulent misrepresentation a "scheme to defraud." *Public Pension Fund Group v. KV Pharmaceutical Co.,* 679 F.3d 972, 987 (8th Cir. 2012). Rather, scheme liability requires proof of participation in an illegitimate, sham, or inherently deceptive transaction where the defendant's conduct or role has the purpose and effect of creating a false appearance. *St. Anselm Expl. Co.*, 936 F. Supp. 2d at 1299, (citing *SEC v. Daifotis,* 2011 WL 2183314 at *9 (N.D. Cal. June 6, 2011), *modified on other grounds,* 2011 WL 3295139 (N.D. Cal. Aug. 1, 2011); *SEC v. Lucent Technologies, Inc.,* 610 F. Supp. 2d 342, 360 (D.N.J. 2009). The conduct must be "inherently deceptive when performed." *SEC v. Kelly,* 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011).

The TAC is entirely devoid of any factual allegations against Mr. Hipkins which would support a claim against him under SEC 10b-5(a) and (c). While Plaintiff makes several conclusions about Mr. Hipkins, there is not even one fact alleged that Mr. Hipkins did something or caused something to be done that would "operate as a fraud or deceit on any person" or which is inherently deceptive. The sole and only factual statement in the TAC mentioning Mr. Hipkins by name, outside of the vague allegation that he had made a representation in an "article" that

Root9b was "the #1 Cybersecurity 500 for the 4th consecutive quarter" (TAC at 7), appears on page 13 of the TAC. Plaintiff alleges that as to "The Asset Acquisition Agreement between the Private Investor[10] and the Secured Creditors[11]" (*id.* at 12), "I [Plaintiff] believe these documents will show Eric Hipkins still has ownership of the Company"[12] (*id.* at 13).

The relevant factual allegations against Root9b consist of factual allegations that a Company whose makeup and ownership is not identified—Quad Capital Management— purchased a large amount of Root9b stock. As Quad Capital Management bought stock, the individual stock price went up. Near the same time period Root9b issued promissory notes to a group of investors, also unidentified. There are no facts alleged showing whether Root9b received any money or other consideration from the investors or any mention of a loan. At some point the investors demanded payment in full of the Notes[13] and eventually foreclosed against the assets of the company. Within a short time of the investors demanding payment, Quad sold its stock for an unknown price. The investors ended up owning the assets of Root9b as a result of the foreclosure sale. Later the assets were sold by the investors to a "Private Investor" (apparently Tracker Capital Management, although the TAC is far from clear on this issue) that "bought all the assets for fair value pursuant to an arms-length business transaction . . . ." (TAC at 11.) Root9b Holdings was left with no assets and no stock value. The transactions involving

---

[10] Identity not specified.

[11] Identities not specified.

[12] Plaintiff attaches a number of documents to her Complaint without explanation of their meaning or relevance to the case. Mr. Hipkins' name appears in some of the documentation attached.

[13] There is nothing in the TAC explaining whether or not the company could have paid the Notes in full.

Root9b were investigated by the SEC but Root9b did not appear at the SEC hearing. (*Id.*) Root9b is in the "process of delisting the company from Nasdaq." (*Id.*)

Although the Plaintiff claims "insider trading" and "swindle," she does not identify any people involved in any of the transactions and the court is unable to draw a conclusion that anyone was "inside" any of the companies involved. There are no facts set forth which would indicate that any of the companies were related, had overlapping ownership or directors or were anything but separate entities engaging in business. There are no factual allegations that any person actually benefitted from the transactions alleged and no allegation that Plaintiff lost any money because of the transactions.

Even granting Plaintiff the deference owed to a *pro se* plaintiff, based on the facts set forth in the TAC, if Claim One is deemed to have been brought under the federal securities laws, specifically Rule 10b-5, Plaintiff fails to state a claim under Rule 12(b)(6) against either defendant. But, because neither party moved to dismiss based this argument, the court may only address this claim and dismiss *sua sponte* if allowing the Plaintiff an opportunity to amend her complaint would be futile. The court finds that allowing Plaintiff to file an amended complaint to assert a claim under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5(a) and (c), if that was her intent, would not necessarily be futile. Therefore, the court declines to infer that securities fraud claims pursuant to Rule 10b-5(a) and (c) are being attempted in Claim One and, instead, Recommends that Plaintiff be granted an opportunity to amend her Complaint.

### C. Claim Two—False Statements

Plaintiff does not list her statutory basis for Claim Two. As with Count One, however, she asserts facts lending themselves to an analysis under Rule 10b–5(b). Defendant Hipkins has

addressed Plaintiff's Claim Two under Ruel 10b-5 and requested dismissal. However, Root9B does not move to dismiss under this theory, and, as such, the court addresses the allegations against Root9B in Claim Two *sua sponte*.

To state a Rule10b–5 claim for securities fraud under subsection (b), a plaintiff must plead that:

> (1) the defendant made an untrue or misleading statement of material fact, or failed to state a material fact necessary to make statements not misleading; (2) the statement complained of was made in connection with the purchase or sale of securities; (3) the defendant acted with scienter, that is, with intent to defraud or recklessness; (4) the plaintiff relied on the misleading statements; and (5) the plaintiff suffered damages as a result of his reliance.

*Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).

The state of mind required to state a cause of action under Rule 10b–5(b) is scienter, that is, an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 (1976). When alleging that a defendant acted with a particular state of mind, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). Scienter can be proven by showing either knowing or intentional misconduct or recklessness, that is, " 'conduct that is an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant' or is so obvious that the actor must have been aware of it.' " *City of Philadelphia v. Fleming Companies, Inc.,* 264 F.3d 1245, 1258 (10th Cir. 2001) (quoting *Anixter v. Home–Stake Production Co.,* 77 F.3d 1215, 1232 (10th Cir. 1996)).

The PSLRA similarly requires that "the complaint" in a securities fraud action under Rule 10b–5 "shall specify each statement alleged to have been misleading, the reason or reasons

why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). Plaintiffs alleging securities fraud under subsection (b) "must set forth the time, place, and contents of the false representation, [and] the identity of the party making the false statements." *U.S. ex rel. Sikkenga v. Regence Bluecross Blueshield of Ut.*, 472 F.3d 702, 726–27 (10th Cir. 2006). Thus, a plaintiff suing under Rule 10b–5 must plead with particularity the defendant's fraudulent acts and the defendant's state of mind. *See Adams v. Kinder–Morgan*, 340 F.3d 1083, 1095–96 (10th Cir. 2003).

Plaintiff alleges a maximum of three false and/or misleading statements. The first is that in articles she claimed to have read statements made by Defendant Hipkins wherein he stated that Root9b was "the #1 Cybersecurity 500 for the 4th consecutive quarter." (TAC at 7.) Plaintiff does not state when she read the articles containing the statement nor in what publications the statements were printed. Plaintiff merely stated that "When I googled the #1 Cybersecurity Company," Root9b came up. Plaintiff attaches several articles apparently taken off the internet where various websites mention root9B among the "best cyber security companies" in one form or another. Plaintiff does not allege what, if any connection exists between Mr. Hipkins and/or root9b and the purveyor of the website advertisements.

Further, Plaintiff does not allege any connection between Defendant Hipkins' alleged statement and her purchase of securities other than it was her understanding that "Artificial Intelligence was the best investment for the future." (*Id.*) Also, even if a foundation for the statement was established, Plaintiff sets forth no facts to establish that the statement was misleading, false or material.

Even if Plaintiff could overcome these deficiencies by more detailed pleading, at best the statement consists only of corporate "puffing"—a " generalized statement[] of optimism . . . not capable of verification"—that is "not actionable because reasonable investors do not rely on them in making investment decisions." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th Cir. 1997) (collecting cases). *In re Level 3 Commc'ns, Inc. Sec. Litig.*, 667 F.3d 1331, 1340 (10th Cir. 2012) (noting representation that company was "focused on insuring that the excellent reputation that [the company] has earned over the years for customer service does not get degraded" was mere puffery and not something upon which a reasonable investor would base a trading decision). The statement is, therefore, not material. Lastly, even if the statement was made by Defendant Hipkins, the Plaintiff has set forth nothing, much less anything plausible, to establish the required scienter (intent to defraud) by Defendants Hipkins or Root9B.

The second alleged statements are those made by the unidentified "male" who answered the phone at some "office on the NYSE"[14] (hereinafter "NYSE statements" and "NYSE speaker"). (TAC at 8). It is not entirely clear what actual entity Plaintiff was calling or the entity to which the NYSE speaker belonged. The foundational prerequisites for the NYSE statements are entirely lacking. There no facts set forth from which a reasonable jury could determine who Plaintiff spoke to at the New York telephone number who told her Root9b was "close, if not completing a contract with the Federal Government. This contract with the Federal Government would bring in millions of dollars." No documents attached to the TAC indicate that Root9b has offices in New York. This allegation does not come even marginally close to being pleaded with

---

[14] The court uses NYSE (New York Stock Exchange) because that is the factual allegation contained in the TAC. However, all documentation submitted by the parties, including the Plaintiff, indicate that root9b Holdings, Inc. was traded on the Nasdaq, not the NYSE.

the particularity demanded to support a Rule 10b–5(b) claim. Not only is the NYSE speaker unknown, no facts have been pleaded which would indicate he had the requisite scienter while speaking.

The other statements that the Plaintiff identifies are those made by the unidentified "person" with whom she spoke at the company's Colorado Springs offices (hereinafter "COS statements" and "COS speaker"). Plaintiff implies, although very vaguely, that the statements were made by an employee of Root9B and therefore could potentially be imputed to the company. However, Plaintiff still does not meet the legal specificity requirements here either, and her own allegations disabuse scienter on the part of the COS speaker, whom Plaintiff "does not want to get in trouble." Further, the Plaintiff has also not set forth any facts which, if proven, would show the statements were false or misleading. In particular, the COS Speaker said, "they have been speaking to investors" and "the investors will pay off the debt"—both statements which appear to be true according to the remainder of the factual allegations in the TAC. While it appears that the opinion statements from the COS speaker that "this will be good for stockholders" and that the company would be "stabilized" appear to have been inaccurate predictions, those statements hardly qualify as statements that would influence any reasonable person in the purchase or sale of stock. They are simply not material. Finally, according to the TAC, the COS statements were made to Plaintiff after she had already purchased stock in Root9b,[15] so did not influence her in the purchase of the stock.

Lastly, as to the NYSE statements and the COS statements, the court notes that these statements are not and cannot be imputed to Defendant Hipkins. Plaintiff has alleged no facts

_____

[15] Plaintiff called the company because she wanted to attend a stockholder meeting.

that "plausibly infer" that Defendant Hipkins had knowledge of the statements made by the COS speaker or the NYSE speaker. *City of Philadelphia v. Fleming Companies, Inc.*, 264 F.3d 1245, 1263 (10th Cir. 2001).

Even granting Plaintiff the deference owed to a *pro se* plaintiff, she fails to state a claim pursuant to Rule 10b–5(b). Therefore, Hipkins' Motions to Dismiss with respect to Claim Two, claims pursuant to SEC Rule 10b–5(b) should be granted.

Defendant Root9b did not move to dismiss Claim Two on any ground other than standing. The Court is not empowered to dismiss Claim Two *sua sponte* against the non-moving Root9b because while the factual averments in the TAC patently and obviously fail to state a claim under Fed. R. Civ. P. 12(b)(6), this court finds that it would not necessarily be futile for the Plaintiff to attempt to amend her Complaint to state an appropriate claim pursuant to Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5. Therefore, Claim Two must proceed against Root9b.

**WHEREFORE**, for the foregoing reasons, the court

**RECOMMENDS** that

Defendant Eric Hipkins' Motion to Dismiss the Third Amended Complaint [Doc. No. 29] be **GRANTED** and that all claims against Defendant Eric Hipkins be dismissed.

Defendant Root9B's Motion to Dismiss [Doc. No. 30] be **GRANTED** in part and **DENIED** in part. Root9B's Motion should be **DENIED** with respect to its arguments pursuant to Fed. R. Civ. P. 12(b)(1), **DENIED** as unnecessary insofar as the motion requests conversion to summary judgment and **GRANTED** as to Claim One**,** violations of 18 U.S.C. § 1348.

The court further **RECOMMENDS** that

Plaintiff be allowed to file an amended complaint to assert claims under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 against both defendants within a specified time period consistent with this Recommendation.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52

F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 4th day of March, 2019.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge